UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL AUDUBON SOCIETY, INC.,

                              Plaintiff,

        -against-

SONOPIA CORPORATION,

                              Defendant.

**ECF CASE**

09 Civ. 975 (PGG)

**OPINION AND ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, Plaintiff National Audubon Society, Inc. ("Audubon") alleges that Defendant Sonopia Corporation breached a three-year license agreement by failing to pay Audubon minimum outstanding guaranteed royalties and advertising/rental revenues it is obligated to pay under the agreement. (Cmplt. ¶¶ 16–19) Audubon's Complaint seeks $135,000 in damages, plus interest, attorneys' fees, and costs. Audubon has not yet served the Summons and Complaint on Sonopia.

        Before this Court is Audubon's February 26, 2009 ex parte motion for an order of attachment, pursuant to CPLR § 6201 et seq., "against all deposits Sonopia has with Silicon Valley Bank, up to $150,000." (Notice of Motion) Audubon seeks an order directing the United States Marshals in this District and the Northern District of California to levy upon all sums Sonopia has on deposit at the Silicon Valley Bank, whether held here or in California.

        For the reasons stated below, Audubon's application is DENIED.

## BACKGROUND

        Audubon alleges that on June 25, 2007, it entered into a three-year license agreement (the "Agreement") with Sonopia wherein Sonopia received a license to use

Audubon's trademarks, membership list, and other intellectual property to market cellular telephone service subscriptions and supporting equipment to Audubon Society members. (Cmplt. ¶¶ 6–7; Pltf. Br. 1)  Under the Agreement, Sonopia agreed to pay Audubon $25,000 annually – or $75,000 over the three-year term – for advertising space in <u>Audubon Magazine</u> and for use of Audubon's membership file.  (Pinto Decl., Ex. 1, at Ex. D)  Audubon further alleges that the Agreement required Sonopia to pay Audubon minimum guaranteed royalties of $25,000 annually, or a total of $75,000 during the Agreement's three-year term.  (Cmplt. ¶ 8; Pltf. Br. 2)  Of the $150,000 allegedly owed to Audubon under the Agreement, Sonopia has paid only the initial $15,000 annual royalty advance payment.  (Cmplt. ¶ 9)  Sonopia made this payment by drawing a check, dated August 24, 2007, on its account with Silicon Valley Bank, which is based in Santa Clara, California and which allegedly has an office in New York.  (<u>See</u> Pinto Decl. ¶¶ 8–9; <u>id.</u>, Ex. 2; DeLaurentis Decl. ¶ 21)

On April 10, 2008, mocoNews.net attributed the following statements to Sonopia's Chief Executive Officer, Juha Christensen:

> Reports that Sonopia was shutting down spread like wildfire yesterday, but its founder Juha Christensen said today it's not true. The company is still alive, but drastically scaling back its business and essentially hibernating until the U.S. M[obile ]V[irtual ]N[etwork ]O[perator] market turns around.  Sonopia has eliminated all of its U.S. employees from its Menlo Park, Calif. headquarters.  Even Christensen holds the unpaid position of Chairman.  In their development offices in Ukraine, they have 30 people or half as many as before.  (DeLaurentis Decl., Ex. 4)

Also in April 2008, a former employee of Sonopia told Sandra Pinto, Audubon's Director of Licensing, that Sonopia had ceased operations.  (Pinto Decl. ¶ 10)  Pinto then spoke with Christensen, who purportedly told Pinto that Sonopia had "'ceased operations,'" "was engaged in an 'orderly shutdown,'" was "'unable to fulfill its obligations,'" had no assets, and had been released from its liabilities.  (<u>Id.</u> ¶¶ 11–14)  Pinto claims that she immediately informed

2

Christensen that Audubon "would not be releasing Sonopia from its obligations under the Agreement." (Id. ¶ 14)

On May 19, 2008, Audubon sent Sonopia a letter "exercis[ing] [Audubon's] right to terminate the Agreement" "[p]ursuant to Section 8(a)(iv) of the Agreement. . . ." (Id., Ex. 3) Citing Section 5(b) of the Agreement, the termination letter "demand[ed] immediate payment of all of Sonopia's payment obligations" – which Audubon claimed amounted to $135,000 – and "reserve[d] [Audubon's] right to claim interest on such amount." (Id.)

According to Audubon, Sonopia continues to operate in the Ukraine, and its website (www.sonopia.com) remains operational. (Pltf. Br. 2–3) Although this website lists an office at 1560 Broadway, Suite 315, New York, New York, Audubon's counsel's visit to this location in January 2009 revealed that Sonopia has no presence there. (DeLaurentis Decl. ¶¶ 5–6)

## DISCUSSION

**A.      Applicable Law**

Under Fed. R. Civ. P. 64, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." See Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214, 218–19 (2d Cir. 2006) ("Attachment is available in a federal court, subject to qualifications not applicable here, 'under the circumstances and in the manner provided by the law of the state in which the district court is held.'") (quoting Fed R. Civ. P. 64). Audubon's application for an order of attachment against

3

Sonopia's bank account is thus governed by New York law,[1] which permits ex parte applications for orders of attachment even where, as here, a plaintiff has not yet served the summons on the defendant. CPLR § 6211(a) ("An order of attachment may be granted without notice, before or after service of summons and at any time prior to judgment.").

As the party moving for an attachment, Audubon has the burden of proving the four elements set forth in CPLR R 6212(a). Buy This, Inc. v. MCI Worldcom Commc'ns, Inc., 178 F. Supp. 2d 380, 382 (S.D.N.Y. 2001). Audubon must show

> that there is a cause of action, that it is probable that [it] will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to plaintiff.

CPLR R 6212(a).

To satisfy the third element listed in Rule 6212(a), Audubon relies solely on paragraph (3) of CPLR § 6201. That paragraph states that grounds for attachment exist where

> the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts.

CPLR § 6201(3).

Audubon bears a heavy burden in attempting to establish its right to an attachment here, because "New York attachment statutes are construed strictly against those who see to invoke the remedy." Buy This, Inc., 178 F. Supp. 2d at 383; see generally Weinstein, et al., 12 New York Civil Practice: CPLR, ¶ 6201.02 (2d ed. 2008) (attachment subject to strict construction because this remedy "deprives the defendant of the use and enjoyment of property

---

[1] In addition, the parties' Agreement specifies that it "shall be construed in accordance with the internal substantive laws of New York applicable to contracts to be wholly performed therein." (Pinto Decl., Ex. 1, ¶ 7)

at an extremely embryonic stage of the litigation and long before the defendant's liability to plaintiff has been established").

B. **Audubon Has Satisfied the First, Second, and Fourth Requirements for an Order of Attachment Under CPLR R 6212(a)**

"As to the first and second requirements, i.e., that a claim for a money judgment exists and that the movant is likely to succeed on the merits, 'the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts.'" Bank Leumi Trust Co. v. Istim, Inc., 892 F. Supp. 478, 482 (S.D.N.Y. 1995) (quoting National Bank & Trust Co. v. J.L.M. Int'l, Inc., 421 F. Supp. 1269, 1272 (S.D.N.Y. 1976) (citation omitted)).  To satisfy the second requirement, Audubon must simply "demonstrate that it is more likely than not that it will succeed on its claims." Thornapple Assocs., Inc. v. Sahagen, No. 06 Civ. 6412 (JFK), 2007 WL 747861, at *4 (S.D.N.Y. Mar. 12, 2007)  Finally, "[i]n determining whether the fourth requirement, that 'the amount demanded from the defendant exceeds all counterclaims known to the plaintiff' is met, courts are to examine only the amount of the counterclaims that the plaintiff concedes are just." Bank Leumi Trust Co., 892 F. Supp. at 482 (quoting CPLR R 6212(a)) (emphasis in original).

Here, the Pinto Declaration and its exhibits are sufficient to state a claim for a money judgment arising from Sonopia's alleged failure to make payments due to Audubon under the Agreement. (Cmplt. ¶¶ 15–21; Pinto Decl. ¶¶ 20–21)  With respect to likelihood of success, based on Audubon's papers it appears that it is likely to prevail on its breach of contract claim. Sonopia has not made the payments required under the Agreement[2] and has told Audubon that it

---

[2] Because Audubon's motion for an order of attachment is denied, this Court does not reach the issue of whether Audubon's damage calculations are correct.  The Court notes, however, that language in the Agreement may limit Sonopia's post-termination payment obligations, notwithstanding the provision that accelerates the timing of Sonopia's royalty payments upon

5

has "ceased operations" and is "unable to fulfill its obligations."  (Pinto Decl. ¶¶ 10–19; id., Exs. 1, 3; DeLaurentis Decl., Ex. 4)  Finally, Audubon's Director of Licensing has affirmed that "[t]he amount demanded in this Complaint exceeds all known counterclaims that Sonopia could assert against Audubon."  (Pinto Decl. ¶ 22)  Given that the fourth requirement permits consideration of only the amount of potential counterclaims that a plaintiff concedes is just, Pinto's affirmation that "[t]he amount demanded in this Complaint exceeds all known counterclaims that Sonopia could assert against Audubon" is adequate under CPLR R 6212(a). (Pinto Decl. ¶ 22)

C. **Audubon Has Not Satisfied the Third Requirement for an Order of Attachment**

Audubon's motion thus turns on whether it has satisfied the third requirement for an order of attachment, which is that "one or more grounds for attachment provided in section 6201 exist."  CPLR R 6212(a).  As noted above, Audubon relies solely on paragraph 3 of CPLR § 6201, which requires proof of two elements:

> (i) that the defendant either is about to or has assigned, disposed of, encumbered or secreted property, or removed it from the state, and
> (ii) that the defendant has acted or will act with the intent to defraud his or her creditors, or to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor.

Bank Leumi Trust Co., 892 F. Supp. at 482 (citing CPLR § 6201(3)).

With respect to Section 6201(3)'s first element, Audubon asserts that "proof of the transfer of property out of state is a physical fact easily proven here."  (Pltf. Br. 3)  Audubon

---

termination.  (Compare Pinto Decl. Ex. 1, ¶ 5(b) ("Upon expiration or termination of this Agreement for any reason, all royalty obligations hereunder, including annual advances and minimum guaranteed annual royalties, shall be accelerated and shall immediately become due and payable.") with id., ¶ 8(a)(v) ("Sonopia's obligation to pay the Minimum Guaranteed Annual Royalties shall remain in effect for the annual period in which a termination by Audubon occurs.") (emphasis added).

6

notes that Sonopia's website lists an office at 1560 Broadway in Manhattan, and that Audubon's counsel's visit to this location disclosed no such office. Audubon infers from this fact that Sonopia removed property from New York State. Audubon also notes that Sonopia has closed its offices in Menlo Park, California and terminated the employees who worked there. Based on these facts, Audubon argues that Sonopia has "mov[ed] operations (and therefore assets as well) from New York and California to Ukraine." (Pltf. Br. 3–4)

As an initial matter, Section 6201(3) requires proof that the defendant has, or is about to, dispose of or remove property from New York State. Sonopia's decision to shut its Menlo Park, California operation has no direct bearing on that issue. As to the absence of a Sonopia office at 1560 Broadway, Audubon has offered no evidence whatsoever as to when Sonopia maintained an office at that location, when it closed, what if any property Sonopia maintained at that address, what became of that property, or whether any of that property was transferred out of state. And while Audubon argues that Sonopia has transferred its operations to Ukraine, the exhibits submitted by Audubon demonstrate that Sonopia previously maintained offices in Ukraine, and that staffing at Sonopia's Ukraine facility declined by 50% after the Menlo Park facility was closed. (DeLaurentis Decl., Exs. 1, 4). In sum, there is no evidence that Sonopia has transferred its operations to Ukraine. While this Court could find that Sonopia decided to shut down its U.S. operations – or put them in "hibernation" until the U.S. "market turns around" (id., Ex. 4) – there is no evidence that any property or assets were transferred out of New York State, much less overseas. Given the heavy burden Audubon must carry to demonstrate a right to the attachment remedy, Audubon's proof of disposition of assets is not sufficient.

Audubon has offered even less proof as to Section 6201(3)'s second requirement: that Sonopia has removed property from New York State "with intent to defraud [its] creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor. . . ." CPLR § 6201(3). Audubon has offered no proof that Sonopia has transferred any assets or property with the intent to defraud creditors. Cf. Bank Leumi Trust Co., 892 F. Supp. at 484 (granting attachment where defendant corporation had attempted to transfer funds from its account to a shareholder's Dutch bank account). While Audubon notes that Sonopia raised $12.7 million in May 2007 to fund its business, and that Sonopia's CEO allegedly told Pinto in April 2008 that Sonopia had no assets and was "unable to fulfill its obligations," these facts do not establish a transfer of assets out of New York for the purpose of defrauding creditors. There is simply no evidence as to what became of the $12.7 million in capital raised in 2007; no proof that this money was ever held in New York; and no proof that it was transferred out of New York as part of a scheme to defraud creditors.

"In seeking an attachment pursuant to [§ 6201(3)], 'fraudulent intent must be proven, not simply alleged or inferred' in the moving papers." Strategic Growth, Int'l v. RemoteMDx, Inc., No. 06 Civ. 3915 (RWS), 2008 WL 4179235, at *8 (S.D.N.Y. Sept. 10, 2008) (quoting Encore Credit Corp. v. LaMattina, No. 05 Civ. 5442 (CPS), 2006 WL 148909 (E.D.N.Y. Jan. 18, 2006)). See Abacus Federal Sav. Bank v. Lim, 8 A.D.3d 12, 13, 778 N.Y.S.2d 145, 146 (1st Dep't 2004) ("[R]emoval, assignment or other disposition of property is not a sufficient ground for attachment; fraudulent intent must be proven, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits.") Here, Audubon provides no evidence that Sonopia's actions reflected anything other than a downturn in the U.S. market and a decision to retrench in the Ukraine until the U.S. market

rebounded.  See Strategic Growth, Int'l, 2008 WL 4179235, at *8 ("[N]one of Plaintiffs' allegations or evidence regarding the state of RMDx's finances or allegedly improper dividend are sufficient to establish that RMDx has or intends to dispose of property or remove it from the state, or that RMDx has acted or intends to act to frustrate the enforcement of any judgment against it.") (denying motion for attachment pursuant to Fed. R. Civ. P. 64 and CPLR § 6201(3)).

While "fraudulent intent is rarely susceptible of direct proof," In re Kaiser, 722 F.2d 1574, 1582 (2d Cir. 1983), Audubon has not sought "to prove intent to defraud circumstantially by proof of certain 'objective facts' – 'badges of fraud' – that give rise to an inference of intent to defraud" such as transfers not supported by adequate consideration, insolvency arising from a transfer, effective control of property by the defendant after a purported transfer, or a transfer outside the regular course of business.  Lippe v. Bairnco Corp., 249 F. Supp.2d 357, 374–75 (S.D.N.Y. 2003).  At most, Audubon has shown that Sonopia had a New York office located at 1560 Broadway but no longer does; that Sonopia's operations in Ukraine have continued; and that its website remains operational.  This evidence is plainly not sufficient to establish that Sonopia has transferred assets in order to defraud creditors.  Nor may this Court infer such intent from Audubon's unsupported allegation that "Sonopia may well shift its remaining assets (if any) from the United States to Ukraine and thereby pragmatically defeat the jurisdiction of this Court."  (Pltf. Br. 6)

Because Audubon has not shown either that Sonopia removed property from New York State or that it did so with the intent to defraud creditors or frustrate the enforcement of a

judgment against it, Audubon has not established its right to an attachment under CPLR § 6201(3).[3]

## CONCLUSION

For the reasons stated above, Plaintiff's motion for an order of attachment is DENIED. The Clerk of the Court is directed to terminate Plaintiff's motion (Docket No. 3).

Dated: New York, New York
March 5, 2009

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge

---

[3] Even if Audubon had offered proof that assets were transferred with fraudulent intent, it is not clear that this Court could, as Audubon requests, issue an attachment order affecting a Sonopia bank account in California. It appears that Silicon Valley Bank – where Sonopia allegedly maintains an account – is a California bank with a branch office in New York. (DeLaurentis Decl. ¶ 21; Pinto Decl., Ex. 2) "In order to be subject to attachment, [however,] property must be within the court's jurisdiction, and the mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment merely by serving a New York branch." National Union Fire Ins. Co. v. Advanced Employment Concepts, Inc., 269 A.D.2d 101, 101, 703 N.Y.S.2d 3, 4 (1st Dep't 2000) (affirming vacatur of order attaching respondent's bank accounts in a Florida bank that had a New York branch because the Florida accounts were outside the court's jurisdiction) (citation omitted). See Koehler v. Bank of Berm. Ltd., 544 F.3d 78, 85 (2d Cir. 2008) (citing National Union Fire Ins. Co., 269 A.D.2d at 101, 703 N.Y.S.2d at 4). Thus, to the extent that Audubon seeks to attach Sonopia's California bank account merely because Silicon Valley Bank has a branch in New York, this Court lacks jurisdiction to issue such an order.

10