UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

NATIONAL AUDUBON SOCIETY, INC., :

Plaintiff, :

-against- :

SONOPIA CORPORATION, :

Defendant. :

--------------------------------------------------------x

**REPORT AND RECOMMENDATION TO THE HONORABLE PAUL G. GARDEPHE**

09 Civ. 975 (PGG) (FM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 9/1/10

**FRANK MAAS,** United States Magistrate Judge.

I. Introduction

In this action, plaintiff National Audubon Society, Inc. ("Audubon") seeks to recover damages against defendant Sonopia Corporation ("Sonopia") arising out of Sonopia's breach of a license agreement between the parties. On November 13, 2009, after Sonopia failed to respond to an order to show cause why a default judgment should not be entered by reason of its failure to answer the complaint, Your Honor referred this matter to me to conduct an inquest regarding the damages to be awarded to Audubon. (See Docket Nos. 12, 17, 22, 24). Thereafter, by order dated December 29, 2009, I directed Audubon to serve and file its inquest papers on or before February 26, 2010, and that Sonopia respond on or before April 9, 2010. (Docket No. 25). Audubon complied with its deadline and has since supplemented its papers (see Docket Nos. 26-31); Sonopia has not submitted any papers or had any contact with the Court.

As set forth below, I recommend that Audubon be awarded judgment against Sonopia in the amount of $164,171.77, consisting of $134,992.67 in contract damages, interest in the amount of $17,360.42, attorney's fees in the amount of $11,107, and costs and disbursements in the amount of $711.68.

## II. Standard of Review

In light of Sonopia's default, Audubon's well-pleaded allegations concerning issues other than damages must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998). Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim though the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Here both requirements have been met.

III. Facts

Audubon's Complaint and inquest papers establish as follows:

Audubon is a New York not-for-profit corporation with offices in New York City. (Compl. ¶ 1). Sonopia is a Delaware corporation with offices in Kiev, Ukraine. (Id. ¶ 2).

On June 25, 2007, Audubon and Sonopia entered into an agreement pursuant to which Audubon granted Sonopia a three-year license ("License") to use Audubon's trademarks, membership list, and other intellectual property to market cellular telephone equipment and services to Audubon members. (Undated Decl. of Sandra Pinto in Supp. of J. After Inquest (Docket No. 27) ("Pinto Decl. I") Ex. 1 ("Agreement"); Compl. ¶ 6). In return, Sonopia promised to pay Audubon $25,000 per year for advertisements in Audubon's magazine or the rental of Audubon's membership lists. Sonopia also agreed to pay a minimum of $25,000 per year in guaranteed royalties. Thus, over the three-year term of the License, Audubon was to receive a minimum of $150,000 from Sonopia. (Id. ¶ 8; Pinto Decl. I ¶ 6; Agreement ¶ 5(a) & Ex. D). The Agreement provides that Sonopia must pay the annual advance "royalties" set forth in Exhibit D and that if the License is terminated, all "royalty obligations shall immediately become due and payable." (Agreement ¶¶ 5(a)(1), (b)). The Agreement further provides that it is to be construed under New York law. (Id. ¶ 9).

After entering into the Agreement, Audubon began to perform by providing Sonopia with information and electronic files needed to market cell phones to Audubon

members. (See Supplemental Decl. of Sandra Pinto in Supp. of J. After Inquest, dated August 27, 2010 ("Pinto Decl. II") (Docket No. 30), ¶¶ 5-6).[1]

Audubon received only two payments from Sonopia. On August 24, 2007, Sonopia tendered the first $15,000 royalty advance payment. (Pinto Decl. I ¶ 8 & Ex. 2). Sonopia tendered an additional $7.33 on January 8, 2008. (Id.).

In or around April 2008, Audubon learned that Sonopia had ceased operations. (Id. ¶¶ 8, 9). Thereafter, on May 19, 2008, Audubon sent notice of termination of the Agreement to Juha Christiansen, Sonopia's Chief Executive Officer. (Id. ¶ 13 & Ex. 3). The notice of termination letter demanded that Sonopia make "immediate payment of $135,000." (Id. Ex. 3). To date, however, Sonopia has not made any further payments to Audubon. (Id. ¶ 15).

IV. Discussion

A. Liability

Under New York law, a breach of contract is established by showing: (i) the existence of an agreement; (ii) the plaintiff's adequate performance of that agreement; (iii) a breach by the defendant; and (iv) damages. See Log On Am., Inc. v. Promethean Asset Mgmt., LLC, 223 F. Supp. 2d 435, 451 (S.D.N.Y. 2001) (citing Harsco Corp. v.

[1] Although the Complaint does not expressly state that Audubon performed its obligations under the Agreement, this is implicit in its breach of contract claim. To be sure that this was in fact true, I requested that Audubon submit a further declaration, which led to the filing of Pinto Decl. II.

Segui, 91 F.3d 337, 338 (2d Cir. 1996)); Johnson v. City of New York, No. 99 Civ. 165 (DAB), 2000 WL 377514, at *5 (S.D.N.Y. Apr. 12, 2000).

Here, Audubon has established the existence of the Agreement with Sonopia. (Compl. ¶ 6; Pinto Decl. I ¶ 4). Moreover, Audubon clearly performed its end of the bargain. (See Pinto Decl. II ¶¶ 3, 4, 6). There also is no question that, since January 2008, Sonopia has not made the payments required by the Agreement. (See Pinto Decl. I ¶ 15). Audubon therefore has established that Sonopia breached the Agreement, leaving only the question of damages to be resolved.

B. Damages[2]

1. Royalties

Pursuant to the Agreement Sonopia agreed to pay the royalties set forth in Exhibit D. (Agreement ¶¶ 5(a)(I)-(iii)). Exhibit D, in turn, provides for "[m]inimum guaranteed annual royalties" of $25,000 per year. (Id. Ex. D). Exhibit D also contains a commitment that Sonopia will spend "no less than $25,000 per year for the purchase of advertising space in Audubon Magazine and/or the rental of Audubon's membership file." (Id.). The Agreement provides that upon "termination of this Agreement for any reason, all royalty obligations hereunder, including annual advances and minimum guaranteed annual royalties, shall be accelerated and shall immediately become due and

---

[2] As Audubon correctly notes in its Supplemental Memorandum of Law, the failure to mitigate damages is an affirmative defense. (See Docket No. 31) (citing Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1580 (2d Cir. 1994)). Thus, the Court need not consider mitigation in this case because Sonopia has waived the defense by failing to answer the complaint.

payable." (Id. ¶ 5(b)) (emphasis added). As Your Honor previously has recognized, the Agreement contains an additional provision stating that "Sonopia's obligation to pay the Minimum Guaranteed Annual Royalties shall remain in effect for the annual period in which a termination by Audubon occurs." (Order dated March 9, 2009 (Docket No. 7) at 5-6 n.2) (citing Agreement ¶ 8(a)(v)) (emphasis added).

Although the Agreement does not unambiguously state that the $25,000 per year for advertising space or Audubon's membership file rental is a payment which is subject to acceleration and payable for all three years, the complaint so alleges, (Compl. ¶¶ 8, 18), and Sonopia has not denied this allegation. More importantly, the Agreement contains a third provision that resolves the apparent temporal conflict between paragraphs 5(b) and 8(a)(v). Paragraph 11(l) of the Agreement states that "[t]he obligations in Sections 1, 4, and 5 and sub-sections thereof shall survive any termination of this agreement." (Agreement ¶ 11(l)). I therefore recommend that the Court construe the Agreement in Audubon's favor, holding Sonopia liable for the payments for all three years. Those payments total $150,000. (See id. Ex. D). Of this sum, Sonopia has only rendered payment in the amount of $15,007.33. Sonopia therefore owes Audubon $134,992.67 in compensatory damages.

2. Interest

Audubon also seeks an award of interest. The Agreement provides that "[i]f Sonopia shall fail to make any payment in full due hereunder," interest shall accrue at the prime rate of Citibank, N.A., plus two percent. (Id. ¶ 5(c)). Audubon's Assistant

General Counsel Nuno Santos sent Sonopia a notice of termination on May 19, 2008. (Pinto Decl. I ¶¶ 13-14 & Ex. 3). Pursuant to the Agreement, all royalty obligations then became due and payable immediately. (See Agreement ¶ 5(b)). Accordingly, Audubon is entitled to interest from May 19, 2008.

Although the Agreement refers to a "prime rate," Citibank does not publish a "prime rate" in the United States. Citibank does, however, publish a "base rate" which fluctuates from time to time. (See Decl. Of Brian M. DeLaurentis, Esq., dated February 10, 2010 (Docket No. 26) ("DeLaurentis Decl."), ¶ 17 & Ex. 6). Inasmuch as "[t]he prime rate is a base rate that banks use in pricing commercial loans to their best and most creditworthy customers," In re Money Gram Int'l, Inc. Sec. Litig., 626 F. Supp. 2d 947, 958 n.6 (D. Minn. 2009) (internal quotation marks omitted), it is appropriate to use the Citibank base rate as the basis for calculation here. I note that this rate is substantially lower than the nine percent prejudgment interest rate to which Audubon would otherwise be entitled. See N.Y. C.P.L.R. §§ 5001, 5004.

In its papers, Audubon has furnished the applicable Citibank rates for the period from May 19, 2008, through February 26, 2010. (DeLaurentis Decl. ¶¶ 16-17 & Ex. 6). As Audubon notes, Citibank lowered its base rate to 3.25 percent on December 16, 2008. (See id.). The Court can take judicial notice that the Citibank base rate has not changed since then. Audubon is therefore entitled to recover $16,855.59 in interest, consisting of the following:

| Time Period | Agreed Rate | No. of Days | Interest[3] |
|---|---|---|---|
| May 19, 2008 – Oct. 7, 2008 | 7.0% | 142 | 3,676.24 |
| Oct. 8, 2008 – Oct. 28, 2008 | 6.5% | 20 | 480.80 |
| Oct. 29, 2008 – Dec. 16, 2008 | 6.0% | 49 | 1,087.33 |
| Dec. 17, 2008 – Sept. 1, 2010 | 5.25% | 624 | 12,116.05 |
| | | TOTAL: | $17,360.42 |

C. Attorney's Fees and Costs

Under New York law, "when a contract provides that in the event of litigation the losing party will pay the attorney's fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." See F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987). The Agreement contained such an attorney's fees provision. (See Agreement ¶¶ 5(c), 11(d)). Accordingly, to determine the amount that Sonopia should be awarded, the Court must consider the reasonableness of the hourly rate for the timekeepers involved in this case and the number of hours they reasonably expended. See Crescent Publ'g Group, Inc. v. Playboy Enters., Inc., 246 F.3d 142, 146 n.3 (2d Cir. 2001); Kerin v. U.S. Postal Serv., 218 F.3d 185, 190 (2d Cir. 2000); Earth Flag, Ltd. v. Alamo Flag Co., 154 F. Supp. 2d 663, 668-69 (S.D.N.Y. 2001).

[3] Interest for each interval has been calculated by multiplying $134,992.67 by the applicable rate, dividing that annual amount by 365, and then multiplying the resulting daily interest amount by the applicable number of days.

1. Reasonable Hourly Rate

In assessing the reasonableness of the rates charged by Sonopia's counsel, the Court may consider what the prevailing market rates are "for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). The Court may rely on its own knowledge of private firm hourly rates in doing so. Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987). The Court may also factor into its determination "the difficulty of the questions involved[,] the skill required to handle the problem[,] the time and labor required[,] the lawyer's experience, ability and reputation[,] the customary fee charged by the Bar for similar services[,] and the amount involved." F.H. Krear & Co., 810 F.2d at 1263 (quoting In re Schaich, 55 A.D.2d 914 (2d Dep't 1977)).

Audubon's counsel, Brian M. DeLaurentis, Esq., is a solo practitioner who billed his time at the rate of $350 per hour. He apparently did not use any associates or paralegals in connection with this case. (See DeLaurentis Decl. Exs. 7-8). Although Mr. DeLaurentis did not provide any details regarding his background, the Court can take judicial notice that he has been admitted to practice before this Court since October 25, 1994. See Fed. R. Evid. 201. Additionally, Mr. DeLaurentis's website indicates that he is a graduate of Brooklyn Law School, practiced briefly with a large New York City firm, and began his own practice in 1995. BRIAN DELAURENTIS ATTORNEY AT LAW, http://www.delaurentislaw.com/about.html (last visited September 1, 2010). In a retainer

agreement dated August 11, 2008, Audubon agreed to pay Mr. DeLaurentis $350 per hour for his services. (DeLaurentis Decl. Ex. 7). I find that this rate is reasonable for someone of his background and experience. See Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003) ("A reasonable starting point for determining the hourly rate for purposes of a [fee] calculation is the attorney's customary rate."); Torres v. City of New York, No. 07 Civ. 3473 (GEL), 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008) ($350 per hour not unreasonable for attorney at small firm with ten years' experience).

2. Hours Reasonably Expended

To enable a court to determine the reasonableness of the hours expended, a party seeking an award of attorney's fees must submit contemporaneous time records that indicate the number of hours expended and the nature of the work done. Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); Puglisi v. Underhill Park Taxpayer Ass'n, 964 F. Supp. 811, 817 (S.D.N.Y. 1997). In keeping with this requirement, Audubon has furnished the Court with its counsel's time records. (See DeLaurentis Decl. Ex. 8).

Mr. DeLaurentis spent roughly fifty hours on this litigation. (See id.). Approximately $5,600 worth of this time was spent on an ex parte motion to attach Sonopia's deposits at a bank in California. That motion was denied because Audubon failed to make the showing required under New York law to secure an attachment. (See Docket No. 7 at 6-10). Additionally, in its decision denying an order of attachment, the Court noted that even if Audubon had shown that Sonopia transferred assets with

fraudulent intent, it was "not clear that this Court could . . . issue an attachment order affecting a Sonopia bank account in California." (Id. at 10 n.3). Since the motion thus lacked a legal or factual basis, Audubon should not be permitted to recover the legal fees associated with it.

Additionally, because Mr. DeLaurentis is a one-man show, a portion of the time he devoted to the case understandably reflected work which would be billed at lower rates at larger firms. Among the tasks falling into this category are his completion of the civil cover sheet, review of ECF procedures, and meeting with court clerks to discuss order to show cause and default judgment procedures. (See DeLaurentis Decl. Ex. 8). Although I recognize that Mr. DeLaurentis has already made minor billing concessions to his client, additional set-offs are necessary to account for the time spent on such less-skilled work. I conclude that an additional $2,000 should be deducted to account for those hours. This results in a legal fee award of $11,107.

Audubon is also entitled to recover its disbursements, all of which are reasonable. Mr. DeLaurentis's bills reflect $361.68 in disbursements. In addition, Audubon had to pay a $350 filing fee. (See Docket No. 1). Audubon consequently is entitled to $711.68 in disbursements and costs.

## V. Conclusion

For the reasons set forth above, I recommend that Audubon be awarded judgment against Sonopia in the amount of $164,171.77, consisting of $134,992.67 in

contract damages, interest in the amount of $17,360.42, attorney's fees in the amount of $11,107, and costs and disbursements in the amount of $711.68.

VI. Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen (14) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Gardephe. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated: New York, New York
September 1, 2010

FRANK MAAS
United States Magistrate Judge

Copies to:

Brian M. DeLaurentis, Esq.
Fax: 212-764-6795

Sonopia Corporation
Perscherskliy Uzviz, 19, 5th Fl.
Kiev, Ukraine